**The PEOPLE of the State of Colorado, Complainant,**

v.

**Lawrence P. GRIFFIN, Jr., Attorney–Respondent.**

**No. 88SA177.**

Supreme Court of Colorado, En Banc.

Nov. 7, 1988.

---

Linda Donnelly, Disciplinary Prosecutor, Susan L. Fralick, Deputy Disciplinary Prosecutor Denver, for complainant.

Michael L. Gilbert, Denver, for attorney-respondent.

KIRSHBAUM, Justice.

The respondent, Lawrence P. Griffin, Jr., was charged in three complaints with six counts of professional misconduct. Subsequent to the filing of the complaints, the respondent and the disciplinary prosecutor entered into a stipulation, agreement, and conditional admission of misconduct with respect to the complaints. The stipulation contains different proposals concerning the imposition of an appropriate sanction and also contains the respondent's consent to the imposition of either sanction. A Grievance Committee inquiry panel has recommended that the respondent be suspended from the practice of law for one year and one day subject to certain conditions. Two members of the panel recommended deletion of one of the conditions recommended by the majority. We accept the facts and admission of misconduct agreed to by the parties, and agree with the position of the minority with regard to the appropriate sanction.

### A. Jurisdiction

The respondent was admitted to the practice of law in Colorado on May 26, 1983, and since that time has been registered as an attorney with this court. Accordingly, pursuant to C.R.C.P. 241.1(b), he is subject to the jurisdiction of this court and its Grievance Committee respecting his conduct as an attorney.

### B. Misconduct

#### Count I

In July of 1985, Gary Greer retained the respondent to seek a reduction in a judgment entered against Greer for child support payment arrearages and to obtain relief from a writ of garnishment for the arrearages. Greer contended that he had custody of the child for several months, during which time he had paid all of the child's expenses. He asked the respondent to try to obtain the agreement of the Colorado Department of Social Services to arrange a voluntary payment plan, so that the writ of garnishment could be removed. No written fee agreement was executed. Greer understood that the fee for the re-spondent's services would be $220, and paid that amount to the respondent. The respondent contends that his fee was based on an hourly rate of $60 per hour.

The respondent did not communicate with Greer again until September 27, 1985, when Greer called the respondent and arranged a meeting. On that date the respondent went to Greer's home and obtained original documents supporting Greer's position. Greer left repeated messages for the respondent after that date, but received no response. Greer spoke to the respondent about the garnishments in October 1985, and when they continued, Greer went to the respondent's office in mid-November. He then discovered that the respondent had moved without leaving a forwarding address. The respondent did not contact Greer after that date.

On August 30, 1985, the respondent and the Jefferson County Child Support Division reached an agreement providing for the release of the writ of garnishment and the substitution of a wage assignment therefor. A Division representative stated that a copy of a written stipulation setting forth the terms of the agreement was mailed to the respondent on September 30, 1985, and that the Division subsequently made numerous unsuccessful efforts to contact the respondent about the matter. The respondent contends that he never received such a document and that he obtained the stipulation on November 6, 1985, when he visited the Division's office. The respondent did execute and file with the court a stipulation containing those provisions on November 6, 1985. He never informed Greer of that fact, however. When Greer later learned of the stipulation, he negotiated an agreement with the Division that provided him with a credit against the judgment for the time during which he had custody of the child.

The respondent failed to advise Greer or the Division that he had signed and filed the stipulation with the court. He did not attempt to obtain a credit on the judgment for sums Greer expended while exercising custody over the child, and did not return Greer's original records. This conduct vio-

lated C.R.C.P. 241.6 and the following Disciplinary Rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR6–101(A)(3) (neglecting a legal matter); DR7–101(A)(2) (failing to carry out a contract of employment for professional services); and DR9–102(B)(4) (failing to pay funds and deliver property to a client promptly upon request).

### Count II

On February 28, 1985, Jacob and Vicky Pacheco retained the respondent to seek a permanent guardianship and name change for a child for whom they had legal custody. They agreed to pay a fee of $400 if the matter was uncontested, gave the respondent all of their documentation concerning the child, and paid respondent $100. On July 13, 1985, the Pachecos paid $300 to the respondent and the respondent promised to complete the necessary documents by July 27, 1985.

On August 15, 1985, and on August 29, 1985, the respondent told the Pachecos that he was completing the pleadings and would mail them the following week. The Pachecos did not receive responses to numerous phone messages they left during September 1985. On October 24, 1985, the respondent advised Mrs. Pacheco that he would deliver the completed papers to her the following day; however, he failed to appear. On November 21, 1985, the Pachecos went to the respondent's office and discovered that he had moved and left no forwarding address.

On December 4, 1985, Mrs. Pacheco initiated disciplinary proceedings against the respondent. In March 1986, the respondent contacted Mrs. Pacheco and agreed to return all of the Pachecos' papers. He later indicated he had lost the files but would refund the attorney fee. Before refunding the fee, the respondent had the Pachecos sign a receipt stating that the payment was in full settlement of all claims the Pachecos might have against the respondent, including the complaint filed with the Grievance Committee. The Pachecos understood the document was a release. The respondent refunded the $400 fee, but did not give a copy of the receipt to the Pachecos.

On March 20, 1986, new counsel retained by the Pachecos requested by letter that the respondent forward their file to her. The respondent's conduct violated C.R.C.P. 241.6 and the following Disciplinary Rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR1–102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR6–101(A)(3) (neglecting a legal matter); DR7–101(A)(2) (failing to carry out a contract of employment for professional services); and DR9–102(B)(4) (failing to pay funds and deliver property to a client promptly upon request).

### Count III

In June 1984, the respondent filed a civil action in the Montrose County District Court on behalf of his client, Kybato, Inc., against Richard P. Tisdel, an attorney; Georgia Pritchett and Sundance Oil Company. The defendants filed an answer and counterclaim, and the respondent filed a reply to the counterclaim. On August 2, 1984, the respondent sent a letter containing informal interrogatories to defendant Tisdel. The letter indicated that the respondent was then associated with the law offices of John Fogarty Winston. On August 24, 1984, Milton Bennett, a law partner of Tisdel and the attorney for the defendants, received a letter from the respondent.

On November 29, 1984, the trial court set a status conference for February 8, 1985, and mailed notices thereof to the parties. Bennett filed a motion to continue the conference with the trial court and mailed a copy thereof to the respondent on January 16, 1985. The court denied the motion and Tisdel appeared for the defendants. The respondent did not appear. The trial judge attempted to reach the respondent by phone at Winston's law offices, and was informed that the respondent no longer worked there, and was referred to a Boulder address and phone number. The judge

was unable to contact the respondent in Boulder, has no recollection of speaking with the respondent during that time period, and made no file notes reflecting a phone conversation with the respondent. The respondent states that he returned the judge's call within a week.

On February 13, 1985, the defendants filed a motion to dismiss the case and mailed a copy thereof to the respondent. The respondent filed no response, and on February 25, 1985, the motion was granted with prejudice. The defendants did not pursue their counterclaims. The respondent did not discuss the motion to dismiss with his client until after the order of dismissal was entered.

The respondent stipulates that his client, Kybato, Inc., was damaged by this conduct, although the extent of such damage would be speculative. The respondent's conduct violated C.R.C.P. 241.6 and the following Disciplinary Rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law); and DR6–101(A)(3) (neglecting a legal matter).

## Count IV

In January 1986, Christina M. Simpson retained the respondent to represent her in a dissolution of marriage proceeding. She paid the respondent $100 in fees and $80 for costs. Simpson orally agreed to pay additional fees as the case progressed. She recalls that the amount of future fees was unspecified. The respondent contends that he advised her that future fees would be based upon an hourly rate of $60. No written fee agreement was executed.

The respondent missed appointments with Simpson and did not answer her phone calls. The respondent claims that Simpson called him almost daily, frequently in the middle of the night. A permanent orders hearing was set for a July 1985 date, but the respondent failed to advise Simpson of that fact until the morning of that date. Simpson was unable to attend. The re-

spondent did appear on her behalf, and the case was placed in suspense when her husband failed to appear.

Simpson initiated grievance proceedings against the respondent on September 3, 1986. The respondent subsequently contacted her and angrily stated that she had gotten him into trouble. The respondent later advised Simpson that he would send her the papers she would need to represent herself in the case, but failed to do so. Simpson ultimately obtained the trial judge's permission to proceed *pro se*, although the respondent had not filed a motion to withdraw.

The respondent's conduct violated C.R. C.P. 241.6 and the following Disciplinary Rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law); DR2–110(B) (failing to withdraw from employment after discharge by client); DR6–101(A)(3) (neglecting a legal matter); and DR7–101(A)(2) (failing to carry out a contract of employment for professional services).

## Count V

On February 26, 1985, the respondent opened a trust account at the National Bank of the Rockies in Boulder, Colorado. On November 13, 14 and 18, 1985, the respondent wrote checks on this account to King Soopers in the amounts of $36.45, $23.15 and $16.05, all of which were returned for insufficient funds. On July 25, 1986, a collection agency filed suit against the respondent, and on December 30, 1986, a default judgment was entered against him. On November 22, 1985, the trust account was closed after the respondent received cash of $6.93 and the bank assessed an insufficient funds charge for one of the King Soopers checks.

The respondent commingled personal, business and client funds in the trust account and failed to maintain records of client monies. The respondent is unable to

produce or reconstruct the records of his trust fund and receipts of client funds.

The evidence does not indicate that the respondent converted any client funds. The respondent's conduct violated C.R.C.P. 241.6 and the following Disciplinary Rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(6) (engaging in conduct adversely reflecting on fitness to practice law); DR9–102(A) (failing to preserve identity of client funds); and DR9–102(B)(3) (failing to maintain complete records of client funds and failing to render an appropriate accounting regarding such funds).

## Count VI

On July 25, 1985, Wesley E. Emerson retained the respondent to obtain a dissolution of his marriage. He paid the respondent $200, and the respondent stated that the total fee would be approximately $300. Emerson, who wanted to remarry, was under the impression that the respondent would file a petition for dissolution as soon as possible. Emerson and the respondent met again on two occasions, and Emerson paid the respondent an additional $100.

On or about September 27, 1985, Emerson executed a petition for dissolution of marriage, a motion for service by publication and an affidavit. Although the respondent represented to Emerson that the petition had been filed, the petition was never filed.

In June of 1986, the respondent advised Emerson that the dissolution would be final in six months. After the expiration of this six-month period, Emerson repeatedly left phone messages for the respondent on the respondent's answering machine. None of the calls were returned.

Emerson initiated grievance proceedings against the respondent on May 6, 1987. On July 2, 1987, the respondent wrote Emerson, admitted his failure to perform the services for which he had been hired, and acknowledged that Emerson was due a refund of the fee. The respondent has not returned any fee to Emerson. The respondent's conduct violated C.R.C.P. 241.6 and the following Disciplinary Rules of the Code of Professional Responsibility: DR1–102(A)(1) (violating a disciplinary rule); DR1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); DR6–101(A)(3) (neglecting a legal matter); and DR9–102(B)(4) (failing to pay funds and deliver property to a client promptly upon request).

## C. Additional Findings

At the request of the Disciplinary Prosecutor, the respondent agreed to obtain a psychiatric evaluation. The evaluation included psychological testing. Based on the reports of the psychiatrist and the psychologist, the respondent agreed to execute a joint petition requesting that he be placed on disability inactive status pursuant to C.R.C.P. 241.19(d). The petition was granted, and the respondent has been on disability inactive status effective October 30, 1987. The respondent has no prior disciplinary record.

The psychiatrist concluded that the respondent suffers from a characterologic disturbance and a mood disorder, suggested that the respondent may be an alcoholic and prone to other substance abuse, and stated that the respondent has a mixed personality disorder. The psychiatrist opined that the respondent's emotional disorders may have caused his inability to fulfill his professional responsibilities throughout his career, including the time periods during which the misconduct underlying these grievance proceedings occurred. While the evidence is not conclusive that emotional disorders constituted the sole cause of the respondent's misconduct, see C.R.C.P. 241.19(a), and the respondent has not so stipulated, these emotional disorders may be considered as a mitigating factor with respect to the imposition of an appropriate sanction. *Standards for Imposing Lawyer Sanctions* § 9.32(c) (1986).

There is no evidence that the respondent converted client funds to his own use or that any client other than Kybato, Inc., was injured by his conduct. The respondent's lack of experience, the absence of any prior disciplinary proceedings, and the respon-

dent's willingness to undergo evaluation and accept a transfer to disability inactive status may also be considered mitigating factors. *See Standards for Imposing Lawyer Sanctions* § 9.32(a), (c), (f) (1986).

It is also clear, however, that the respondent pursued a pattern of neglect of his clients' affairs over a lengthy period of time and in a variety of circumstances. His misrepresentations to Emerson concerning the status of dissolution proceedings were especially egregious in view of Emerson's desire to complete the proceedings as soon as possible. His failure to provide Greer, the Pachecos, and a trial court in three different cases in a timely manner with accurate information concerning his business address and phone number demonstrated a marked indifference to his professional responsibilities. In view of the number and severity of the instances of misconduct established by the stipulated facts, taking into consideration the mitigating factors present in this case, we conclude that suspension from the practice of law for a period of one year and one day is the appropriate sanction.

### D. Conclusion

Accordingly, we order that Lawrence P. Griffin, Jr., be suspended from the practice of law for a period of one year and one day, without credit for the time he has been on disability inactive status. The respondent shall make restitution to Wesley Emerson in the amount of $300 within thirty days of the date of this opinion, plus interest at the statutory rate from July 25, 1985. The respondent shall also pay the costs of these proceedings, in the amount of $3,178.20, within ninety days of the date of this opinion, to the Supreme Court Grievance Committee, 600—17th Street, Suite 500–S, Denver, Colorado 80202.

In addition to complying with the requirements of C.R.C.P. 241.22(c), the respondent shall at the time of filing any petition for reinstatement provide a current psychiatric evaluation, including psychological testing, by his present psychiatrist or another psychiatrist approved by the Disciplinary Prosecutor's Office, demonstrating that the respondent has recovered from the emotional difficulties which may have interferred with his ability to practice law. The respondent shall also at that time provide proof that he has abstained from the use of alcohol and drugs except as prescribed by his treating therapist.